IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| DONALD W. MURPHY, | : |
| Appellant, | : |
| | : |
| v. | : 7:07-CV-00027-HL |
| | : |
| J. MICHAEL WEATHERS, | : |
| Appellee. | : |

## O R D E R

Before the Court is an Appeal (Doc. 1) from an order of the United States Bankruptcy Court for the Middle District of Georgia, overruling Appellant's objections to confirmation of the Chapter 11 Plan filed by the Official Committee of Unsecured Creditors ("the Comitee"). On appeal, Appellant contends that the Bankruptcy Court erred as a matter of law by approving the Plan's exculpation and indemnification provisions.

Having considered the record, the briefs filed by both parties, and the relevant case law, this Court holds that: (1) the January 25, 2007 order overruling objections to the inclusion of the exculpation and indemnification provisions is appealable, and (2) under the circumstances, the indemnification and exculpation provisions were not

1

unreasonable and were in the bests interests of the estate.

## I.     BACKGROUND

On March 6, 2006, Firstline Corporation ("Debtor") filed a voluntary Chapter 11 petition.  Appellant Donald W. Murphy was Firstline's sole shareholder and held a general unsecured claim.  Per the filing of the petition, the United States Trustee appointed the Committee.  On May 12, 2006, the Committee filed an emergency motion seeking the appointment of a Chapter 11 trustee to take over control of the Debtor from Mr. Murphy.  After an evidentiary hearing on the motion, the Bankruptcy Court granted the Committee's motion and directed the appointment of a Chapter 11 trustee for Debtor.  Supporting its decision, the Bankruptcy Court noted, in part, "Mr. Murphy has continuously obstructed efforts to proceed with the Chapter 11 case he chose to file in this court.   He has countermanded the instructions and recommendations of the CRO [Chief Restructuring Officer], and he has interfered with the CRO's ability to manage Debtor's finances, to manage communications, to hire and fire employees, and to formulate and implement a financial stabilization plan."  *Trustee Appointment Memorandum Opinion*, at 6-7.

On Nov 29, 2006, the Committee filed its Plan of Liquidation ("the Plan").  On January 8, 2007, Mr. Murphy filed objections to the Plan contending, among other issues not before this Court on appeal, that the exculpation and indemnification provisions of the Plan should not be approved.

The Indemnification and Exculpation provisions provide as follows:

> 12.5. <u>Limitation of Liability of Exculpated Persons</u>: The Exculpated persons shall not have or incur any liability to any Person served with a copy of this Plan or otherwise having notice regarding the filing of the Plan, including, without limitation, the Debtor, for any act taken or omission made in good faith in connection with or in any way related to, or arising our of, the Bankruptcy Case, including, without limitation, the marketing and sale of assets pursuant to the [Agreements], the negotiation, formation, implementation, confirmation, or consummation of this Plan and the Disclosure Statement, or the negotiation or execution of any contract, instrument, release, or other agreement or document created in connection with or related to the Bankruptcy Case, [Agreements] or this Plan, except for gross negligence, willful misconduct, or breach of fiduciary duty as determined by the Bankruptcy Court. The Exculpated Persons shall have no liability to any person served with a copy of this Plan or otherwise having notice regarding the filing of the Plan for actions taken in good faith under or relating to this Plan, including, without limitation, failure to obtain confirmation of this Plan or to satisfy any condition or conditions, or refusal to waive any

condition or conditions precedent to confirmation or to the occurrence of the Effective Date, except for gross negligence, willful misconduct, or breach of fiduciary duty as determined by the Bankruptcy Court.  Further, the Exculpated Persons shall not have or incur any liability to any Person served with a copy of this Plan or otherwise having notice regarding the filing of the Plan for any act or omission in connection with or arising out of their administration of this Plan or the property to be distributed under this Plan or the operations or activities or the Debtor, the Trustee, or the Liquidating Agent, except for gross negligence, willful misconduct, or breach of fiduciary duty as determined by the Bankruptcy Court.  Without limiting the foregoing, the Exculpated Persons shall not have or incur any liability to any Person entitled to a distribution under this Plan if insufficient funds are present to pay that Person that which it is entitled to under the Plan.  Notwithstanding anything to the contrary contained herein, none of the Exculpated Persons shall be released or otherwise free from liability on account of any Avoidance Action held by or belonging to the Estate.

      12.6. <u>Indemnification by Debtor</u>: The Debtor will indemnify, hold harmless and reimburse the Exculpated Persons from and

against any and all losses, Claims, causes of action, damages, fees, expenses, liabilities, and actions for which liability is limited pursuant to Sections 12.4 and 12.5 of this Plan, and the losses, Claims, expenses, etc. of the Exculpated Persons shall be paid from the Estate Assets as they are incurred by the Exculpated Persons. All rights of the Exculpated Persons indemnified pursuant to this Section shall survive confirmation of this Plan.

The Plan defines "Exculpated Person" as follows:

12.4. <u>Exculpated Persons</u>" means, except as limited and restricted in Section 12.5 of this Plan, the Debtor, the Trustee, the Committee, the Committee's individual members acting in their capacity as members of the Committee, The Debtor's Chief Restructuring Officer, and the Debtor's, the Trustee's, and the Committee's respective advisors, attorneys, consultants or professions.

On January 16, 2007, the Bankruptcy Court held a hearing to consider confirmation of the Plan and Mr. Murphy's objections thereto. After hearing arguments on both sides, the Bankruptcy Court issued an order on January 25, 2007, overruling Mr. Murphy's objections.

In overruling the objections to the exculpation and indemnification provisions

the Bankruptcy Court stated the provisions were reasonable because they: (1) merely restate the standard that would apply absent the provisions since they do not exclude liability for gross negligence, willful misconduct, or breach of fiduciary duty; (2) are not prohibited by the Bankruptcy Code or offend public policy, and; (3) are particularly suited for the circumstances surrounding the case given the probability of Mr. Murphy initiating future litigation, especially in light of his documented efforts to obstruct the case and frustrate the efforts of the CRO.

Consequently, the Bankruptcy Court issued the Plan Confirmation Order on February 1, 2007.  Following the Plan Confirmation Order, Mr. Murphy filed the instant appeal on February 6, 2008, for the January 25, 2007 order overruling his objection to the confirmation of the Chapter 11 Plan filed by the Committee.

## II.     STANDARD OF REVIEW

When entertaining an appeal from a bankruptcy court, district courts are entitled to "affirm, modify, or reverse a bankruptcy court's . . . order" and will accept its findings of fact unless those findings are clearly erroneous.  Fed. Bankr. R. 8013 (West 1984 & Supp. 2004); *See* **In re Sublett**, 895 F.2d 1381, 1383 (11th Cir. 1990); *see also* **In re Club Assocs.**, 951 F.2d 1223, 1228 (11th Cir. 1992).  A district court is not authorized to make independent findings of fact.  *See* **In re Sublett**, 895 F.2d at 1384.

In contrast, conclusions of law, including a bankruptcy court's interpretation

and application of the Bankruptcy Code, are reviewed *de novo.  See **In re Chase & Sanborn Corp.***, 904 F.2d 588, 593 (11th Cir. 1990).  This Court, therefore, owes no deference to a bankruptcy court's interpretation of law or its application of the law to the facts.  ***Goerg v. Parungao***, 930 F.2d 1563, 1566 (11th Cir. 1991).

### III.    DISCUSSION

#### A.    Jurisdiction

As an initial matter, Appellee contends this Court lacks jurisdiction to consider this appeal due to Appellants failure to appeal the Plan Confirmation Order entered on February 1, 2007.  According to Appellee, the Plan Confirmation Order is now final and nonappealable given Appellant's failure to file a timely Notice of Appeal in regards to that order specifically.[1]  In other words, the Appellant should have appealed the Plan Confirmation Order entered on February 1, 2007, rather than the January 25, 2007 order overruling Appellant's objection to the confirmation of the Chapter 11 Plan filed by the Committee.  This Court disagrees.

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear bankruptcy appeals from "final judgements, orders, and decrees."  An order is deemed "final,"

---

[1]    Federal Rule of Bankruptcy Procedure 8002(a) requires that a notice of appeal "shall be filed with the clerk within 10 days of the date of entry of the judgment, order, or decree appealed from."

and therefore appealable, only if it "constitute[s] final determination of the rights of parties to secure the relief they seek in this suit." In re Vause, 886 F.2d 794, 797 (6th Cir. 1989) (internal citations and quotations omitted); See also In re Atlas, 210 F.3d 1305, 1308 (11th Cir. 2000).  In the present case, Appellant raised his objection to the exculpation and indemnification provisions during the confirmation process.  In the January 25, 2007 order overruling Appellant's objection to the confirmation of the Chapter 11 Plan filed by the Committee, the Bankruptcy Court gave no indication of reserving the right to modify its decision regarding the exculpation and indemnification provisions.  Cf. United States v. Parmele, 171 B.R. 895, 902 (Order found final for purposes of 28 U.S.C § 158(a) where it conclusively determined the value of secured claim and earlier order on same issue expressly reserved the right to modify the ruling).  Thus, the January 27, 2007 order effectively resolved the issue of the exculpation and indemnification provisions.  The February 1, 2007 Plan Confirmation Order was only a confirmation of, among other issues, the earlier January 27, 2007 order, which was already final in regards to the exculpation and indemnification provisions.

    Nor is the January 27, 2007 order now moot due to the February 1, 2007 Plan Confirmation Order.  The issue would be moot if the appellant had failed to timely

object to confirmation, and would therefore be bound by the Plan Confirmation Order. In re Davis, 160 B.R. 577, 580 (E.D. Tenn. 1993) (internal citations omitted). However, appellant made a timely objection to the confirmation based in part on the inclusion of the exculpation and indemnification provisions, but the objection was overruled on January 27, 2007.

Finally, Appellee cites Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330 (3rd Cir. 2000), as authority that an order confirming a Chapter 11 Plan is a final order.[2] That case is not applicable to the present facts, however, because it only dealt with the separate issue of res judicata, whereby the court was faced with an asserted claim *after* the conclusion of the bankruptcy case. See Mahan, 225 F.3d at 335. That case speaks neither to the finality of orders overruling objections to plan confirmations nor to the impact that subsequent plan confirmation orders would have in regards to appealability of prior orders. Therefore, because the January 27, 2007 order overruling objections to the inclusion of the exculpation and indemnification provisions was final for purposes of 28 U.S.C. § 158(a), a review on the merits is proper.

---

[2] Notably, no authority is cited that directly supports the proposition that an order overruling specific objections to a plan confirmation is not a final order for purposes of 28 U.S.C. § 158(a).

### B.    Exculpation and Indemnification Provisions

The Bankruptcy Code itself does not speak to the validity, or lack thereof, of indemnification or exculpation provisions.[3]  Under 11 U.S.C. § 328, however, the trustee or appointed committee may employ "a professional. . . on any *reasonable* terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingency fee basis." (emphasis added).  The question therefore is whether the indemnification and exculpation provisions at issue in this case are reasonable.

It is well-settled that indemnification and exculpation provisions are not *per se* prohibited.  See In re Thermadyne Holdings Corp., 283 B.R. 789, 756 (B.A.P. 8th Cir. 2002); In re Friedman's, Inc., 356 B.R. 758, 762 (Bankr. S.D. Ga 2005).  In fact, inclusion of such provisions are becoming commonplace for retention agreements and confirmation plans.  See United Artists Co., 315 F.3d at 229 (noting that, "indemnification of financial advisors against their own negligent conduct is becoming a common market occurrence."); See also In re Enron Corp.,

---

[3]    Although indemnification and exculpation are similar concepts, they are distinct legal principles.  Indemnification is the right of an injured party to claim reimbursement for its loss, damage, or liability from the debtor in connection with the services rendered.  Exculpation is different in that, instead of shifting the burden for paying for loss, damage, or liability, it is the right to not be sued in the first instance in connection with the services rendered.

326 B.R. 497, 504 (S.D.N.Y. 2005) (affirming bankruptcy courts order that confirmed plan with similar exculpation clause, in part, because it was "reasonable and customary and in the best interests of the estates."). "However, that [these] provisions. . . are now common in the market-place does not automatically make them 'reasonable' under § 328." United Artists Co., 315 F.3d at 230. Rather the standard is whether the provisions are reasonable under the circumstances and in the best interests of the estate. In re Thermdyne Holdings Corp., 283 B.R. at 756; See also In re Metricom, Inc., 275 B.R. 364, 371 (Bankr. N.D. Cal. 2002) ("the issue is whether particular terms are reasonable under given circumstances, and such a determination can only be made on a case by case basis.")

Appellant, however, asserts that the indemnification and exculpation provisions in this case should only be upheld if they were necessary and supported by consideration. This view is misplaced. Courts that have required indemnification or exculpation provisions to be necessary and supported by consideration do so only within the context of unqualified non-debtor release provisions. See In re Dow Corning Corp., 280 F.3d 648, 658 (6th Cir. 2002) (ruling bankruptcy courts may enjoin a non-consenting creditor's claim against a non-debtor, but only under "unusual circumstances" that should determined by a seven factor inquiry); In re Continental Airlines, 203 F.3d 203, 214 (3rd Cir. 2000) (finding non-consensual releases and enjoining of third party actions against non-

debtors impermissible in that case because "the hallmarks of permissible non-consensual releases—fairness, necessity to the reorganization, and specific factual findings to support these conclusions" were absent); In re Friedman's, Inc., 356 B.R. 758, 760-62 (Bankr. S.D. Ga. 2005) (determining two release provisions, which contained no qualifications for willful misconduct or gross negligence, were valid under the factors set forth in *Dow Corning*).

Both construction of the Bankruptcy Code and policy concerns support a reasonableness standard for indemnification and exculpation provisions that do not extend to willful misconduct, gross negligence, or breach of fiduciary duties. Section 524(e) of the Bankruptcy Code provides that "[e]xcept as provided in subsection(a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). In re PWS Holding Corp., 228 F.3d 224, 245 (3rd Cir. 2000), which reviewed a confirmation plan with a similar exculpation provision, discussed this section at length and concluded it "does not *affect* the liability of [the released] parties, but rather states the standard of liability under the Code, and thus does not come within the meaning of § 524(e)." (emphasis added).

In reaching the conclusion that certain qualified releases merely restate the standard of liability, courts have looked to 11 U.S.C. § 1103(c). As noted in In re PWS, courts have construed 11 U.S.C. § 1103(c), which grants a committee broad

12

authority in formulating a plan, as implying both fiduciary-like duties to committee constituents and a reciprocal grant of limited immunity to committee members and entities that provide services to the committee during the reorganization. In re PWS Holding Corp., 228 F.3d at 246-47 (citing In re L.F. Rothschild Holding, Inc., 163 B.R. 45, 49 (S.D.N.Y. 1994); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 717, 7222 (Bankr. S.D.N.Y. 1992); In re Tucker Freight Lines, Inc., 62 B.R. 213, 216, 218 (Bankr. W.D. Mich. 1986)). This implicit grant of limited immunity is appropriate given such persons would be discouraged from serving in the first instance absent the limited immunity.

Guided by similar concerns, corporate law recognizes that officers and directors may be indemnified from liability provided they conform to their duty of loyalty and duty of care. See In re Joan and David Halpern, Inc., 248 B.R. 43, 47 (Bankr. S.D.N.Y 2000); accord In re Friedman's, Inc., 356 B.R. at 763. This recognition, known as the business judgment rule, is designed to protect the broad discretion conferred upon officers and directors in making decisions regarding the corporation. 3A WILLIAM FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1036 (2008). And as noted in a concurring opinion in United Artists Theatre Co., 315 F.3d at 235, these basic principles of corporate law serve as a useful analogue to Chapter 11 proceedings because they provide a "sophisticated framework" for judging the conduct of a committee and entities

hired by the committee and because "this understanding of the circumstances in which it is sensible to hold [them] responsible for unsuccessful business decisions helps to explain why indemnification agreements such the one in this case are not categorically 'unreasonable.'"

The foregoing discussion evinces several justifications for why the indemnification and exculpation provisions in the Confirmation Plan are reasonable under the circumstances and in the best interests of the estate.  First, the provisions are limited to acts of ordinary negligence, and explicitly do not extend to acts of gross negligence, willful misconduct, or breach of fiduciary duties.[4]  This limited immunity distinguishes these provisions from unqualified non-debtor release provisions and therefore do not run afoul of 11 U.S.C. § 524(e).

Second, nor are the provisions overly broad *per se* by including professionals other than the Committee and its members, such as the Debtor's CRO and the Trustee's agents.  See In re Winn-Dixie Stores, Inc., 356 B.R. 239, 260-61 (Bankr. M.D. Fl. 2006) (upholding similar provisions that limited liability for the Debtor, the Reorganized Debtors, the Creditors Committee, the bank, the

---

[4] Although not raised specifically by the Appellant, the Court notes that to the extent that provision 12.5 purports to protect against breach of certain contractual obligations, it may not be enforceable.  See United Artists Theatre Co., 315 F.3d at 234 (invalidating portion of indemnity provision in professionals retention agreement that arguable extended to protection for breach of contractual obligations, as it was "hardly an indemnity-eligible activity.").

Indenture Trustee, or any of their members, officers, directors, employees, advisors, professionals, or agents, due to the circumstances leading up to the challenged plan confirmation). To the extent that the provisions extend to persons other than the Committee, the Committee members, and entities hired by the Committee, the Bankruptcy Court noted specific reasons for approving the provisions in this case. The Bankruptcy Court made specific findings that Appellant continuously obstructed the Chapter 11 proceedings and would likely initiate future litigation. Under these specific circumstances, approval of the indemnification and exculpation provisions was in the best interests of the estate to protect against further depletion of the Debtor's assets.

## IV.   CONCLUSION

In sum, it is the Courts conclusion that, under the circumstances, the indemnification and exculpation provisions were not unreasonable and were in the bests interests of the estate. Accordingly, the Court affirms the Bankruptcy Courts January 25 order overruling Appellant's objection to the confirmation of the Chapter 11 Plan filed by the Committee.

**SO ORDERED**, this 25th day of September, 2008.

*s/   Hugh Lawson*

**HUGH LAWSON, Judge**

wjc